Shahzada "Shaw" Ashraf, Esq., CA State Bar # 310093
18960 Ventura Blvd #82
Tarzana, CA 91356
Phone: 310-595-0231
Fax: 310-695-2731
E-Mail: Shaw.Ashraf.Esq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AMAN KUMAR
A-246-611-329,

*Petitioner,*

v.

MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, Attorney General of the United States; DAVID VENTURELLA, Acting Director of U.S. Immigration And Customs Enforcement; and WARDEN, DESERT VIEW FACILITY in their official capacities,

*Respondents.*

Case No. ___________________

**PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

1. Petitioner AMAN KUMAR (A-246-611-329) is in the physical custody of the Respondents at the Desert View Facility in Adelanto, California.

2. Petitioner has been detained in DHS/ICE custody for nearly 9 months.

3. Petitioner's prolonged detention violates the Due Process Clause of the Fifth Amendment.

4. During the Rodriguez bond hearing on approximately June 18, 2026, Respondents did not justify the basis for detention and/or explain why the Petitioner is a flight risk or danger to the community by clear and convincing evidence. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider alternatives to detention. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider financial ability to pay. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

5. During the Rodriguez Bond Hearing on approximately June 18, 2026, the Petitioner was pro-se and was also sick and just came in from medical before the Rodriguez Bond Hearing according to the petitioner. In addition, the Petitioner requested a continuance 3-4 times during the Rodriguez Bond Hearing on approximately June 18, 2026, however, was denied and there was a Hindi interpreter during the Rodirguez Bond Hearing and not a Haryanvi interpreter,

which is the Petitioner's native language according to the Petitioner. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

6. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ incorrectly applied the factors in *Guerra*, 24 I&N Dec. 37 (BIA 2006) to determine that Petitioner was a flight risk. Also, the Respondent's didn't bear the burden of showing by clear and convincing evidence that Petitioner poses a flight risk. In addition, the Respondent's didn't establish by clear and convincing evidence that Petitioner is a flight risk. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

7. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be immediately released.

8. In the alternative, should the Court determine that immediate release is not warranted, order Respondents to provide Petitioner with an individualized bond hearing before an impartial immigration judge within seven (7) days, where the government bears the burden of establishing by clear and convincing evidence that Petitioner is a flight risk and/or danger to the community. Also, there must be a consideration of alternatives to detention and financial ability to pay.

## **JURISDICTION**

9. Petitioner is detained in civil immigration custody at Desert View

Facility in Adelanto, California. He has been detained since approximately December 5, 2025

10. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I § 9, cl. 2 of the United States Constitution (Suspension Clause). This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All-Writs Act, 28 U.S.C. § 1651.

## VENUE

12. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484,493-500(1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Petitioner currently is detained.

13. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

**REQUIREMENTS OF 28 U.S.C. § 2243**

14. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause “forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return “within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

15. Habeas corpus is “perhaps the most important writ known to the constitutional law... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement.” *Fay* v. *Noia,* 372 U.S. 391,400 (1963) (emphasis added).“ The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application.”" Yong v. I.N.S.,208F.3d 1116,1120(9th Cir. 2000) (citation omitted).

**PARTIES**

16. Petitioner is a native and citizen of India. He is currently detained at Desert View Facility in Adelanto, California. He is in the custody, and under the direct control, of Respondents and their agents.

17. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the

INA, and oversees ICE, the component agency responsible for Petitioner's detention. Respondent Mullin is empowered to carry out any administrative order against Petitioner and is a legal custodian of Petitioner.

18. Respondent U.S. Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA. DHS oversees ICE and the detention of noncitizens. DHS is a legal custodian of Petitioner.

19. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, he has the authority to adjudicate removal cases and oversees the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA.

20. Respondent David Venturella is sued in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement (ICE). Respondent is a legal custodian of Petitioner and has authority to release him.

21. Respondent Warden of Desert View Facility is sued in their official capacity as Warden of Desert View Facility and has immediate physical custody of Petitioner pursuant to a contract with ICE to detain noncitizens and is a legal custodian of Petitioner.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

22. Petitioner is a noncitizen from India who fled that country and entered the United States in approximately January 2023 and was then released.

23. Afte being released, Petitioner relocated to Sacramento, California then Ontario, California. The Petitioner timely filed an I-589 application for asylum and withholding of removal in approximately April 2023 according to the Petitioner.

24. On approximately December 5, 2025, DHS arrested Petitioner at an ICE Check-In in San Bernardino, California. Petitioner has no criminal history according to the Petitioner. Following his arrest, Petitioner was transferred to Desert View Facility in Adelanto, California, where he remains. Petitioner has been detained in DHS/ICE custody for nearly 9 months now.

25. On approximately March 4, 2026, the immigration judge issued the Petitioner an order of removal. However, the Petitioner timely appealed the immigration judge's decision to the Board of Immigration Appeals (BIA) on approximately March 17, 2026, which is currently pending.

26. The Petitioner had a Rodriguez Bond Hearing on approximately June 18, 2026, where the immigration judge denied bond due to flight risk.

27. During the Rodriguez bond hearing on approximately June 18, 2026, Respondents did not justify the basis for detention and/or explain why the

Petitioner is a flight risk or danger to the community by clear and convincing evidence. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider alternatives to detention. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider financial ability to pay. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

28. During the Rodriguez Bond Hearing on approximately June 18, 2026, the Petitioner was pro-se and was also sick and just came in from medical before the Rodriguez Bond Hearing according to the petitioner. In addition, the Petitioner requested a continuance 3-4 times during the Rodriguez Bond Hearing on approximately June 18, 2026, however, was denied and there was a Hindi interpreter during the Rodirguez Bond Hearing and not a Haryanvi interpreter, which is the Petitioner's native language according to the Petitioner. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

29. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ incorrectly applied the factors in *Guerra*, 24 I&N Dec. 37 (BIA 2006) to determine that Petitioner was a flight risk. Also, the Respondent's didn't bear the burden of showing by clear and convincing evidence that Petitioner poses a flight risk. In addition, the Respondent's didn't establish by clear and convincing

evidence that Petitioner is a flight risk. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

## LEGAL FRAMEWORK

30. "'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention."). This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See id.* at 721 (Kennedy, J., dissenting) ("[B]oth removable and inadmissible [noncitizens] are entitled to be free from detention that is arbitrary or capricious").

31. Due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil

detention—to mitigate the risks of danger to the community and to prevent flight. *Id.*; *Demore*, 538 U.S. at 528.

32. Due process requires that the government provide bond hearings to noncitizens facing prolonged detention. "The Due Process Clause foresees eligibility for bail as part of due process" because "[b]ail is basic to our system of law." *Jennings*, 138 S. Ct. at 862 (Breyer, J., dissenting) (internal quotation marks omitted). While the Supreme Court upheld the mandatory detention of a noncitizen under Section 1226(c) in *Demore*, it did so based on the petitioner's concession of deportability and the Court's understanding at the time that such detentions are typically "brief." *Demore*, 538 U.S. at 522 n.6, 528. Where a noncitizen has been detained for a prolonged period or is pursuing a substantial defense to removal or claim to relief, due process requires an individualized determination that such a significant deprivation of liberty is warranted. *Id.* at 532 (Kennedy, J., concurring) ("[I]ndividualized determination as to his risk of flight and dangerousness" may be warranted "if the continued detention became unreasonable or unjustified"); *see also Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (holding that detention beyond the "initial commitment" requires additional safeguards); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) (holding that "lesser safeguards may be appropriate" for "short- term confinement"); *Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) (holding that, in the Eighth Amendment context, "the length of confinement

cannot be ignored in deciding whether [a] confinement meets constitutional standards"); *Reid v. Donelan,* 17 F.4th 1, 7 (1st Cir. 2021) (holding that "the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention" under section 1226(c)) (internal quotation marks omitted).

33. Detention without a bond hearing is unconstitutional when it exceeds six months. *See Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions under Section 1226(c), which last "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal"); *Zadvydas*, 533 U.S. at 701 ("Congress previously doubted the constitutionality of detention for more than six months."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1091 (9th Cir. 2022) ("[O]nce the [noncitizen] has been detained for approximately six months, continuing detention becomes prolonged" (cleaned up) (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011))); *Rodriguez v. Nielsen*, Case No. 18-CV-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) ("[D]etention becomes prolonged after six months and entitles [Petitioner] to a bond hearing").

34. The recognition that six months is a substantial period of confinement—and is the time after which additional process is required to support continued incarceration—is deeply rooted in our legal tradition. With few exceptions, "in the late 18th century in America crimes triable without a jury were

for the most part punishable by no more than a six-month prison term." *Duncan v. Louisiana*, 391 U.S. 145, 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a benchmark in other contexts involving civil detention. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as an outer limit for confinement without bright line constitutional rules in other areas of law. *See Maryland v. Shatzer*, 559 U.S. 98, 110 (2010) (holding that 14 days must elapse following invocation of *Miranda* rights before re-interrogation is permitted); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991) (holding that a probable cause hearing must take place within 48 hours of warrantless arrest).

35. Petitioner faces severe hardships while detained by ICE. Petitioner is held in a locked down facility, with limited freedom of movement and access to Petitioner's family or support network: "[T]he circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting); *accord Chavez–Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015); *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218, 1221

(11th Cir. 2016). "And in some cases the conditions of their confinement are inappropriately poor" including, for example, "invasive procedures, substandard care, and mistreatment, *e.g.*, indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case of one detainee, a multiday lock down for sharing a cup of coffee with another detainee." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting) (citing Press Release, Off. of Inspector Gen., Dept. of Homeland Sec., *DHS OIG Inspection Cites Concerns With Detainee Treatment and Care at ICE Detention Facilities* (Dec. 14, 2017)); *see also* Tom Dreisbach, *Government's own experts found 'barbaric' and 'negligent' conditions in ICE detention*, NPR (Aug. 16, 2023, 5:01 AM) (reporting on the "'negligent' medical care (including mental health care), 'unsafe and filthy' conditions, racist abuse of detainees, inappropriate pepper-spraying of mentally ill detainees and other problems that, in some cases, contributed to detainee deaths" contained in inspection reports prepared by experts from the Department of Homeland Security's Office for Civil Rights and Civil Liberties after examining detention facilities between 2017 and 2019).

36. Petitioner's detention, without *any* individualized review, is unreasonable under the *Mathews v. Eldridge* due process test.

37. Each year, thousands of noncitizens are incarcerated for lengthy periods pending the resolution of their removal proceedings. *See Jennings*, 138 S.

Ct. at 860 (Breyer, J., dissenting) (observing that class members, numbering in the thousands, had been detained "on average one year" and some had been detained for several years). The *Mathews* test for procedural due process claims balances: (1) the private interest threatened by governmental action; (2) the risk of erroneous deprivation of such interest and the value of additional or substitute safeguards; and (3) the government interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Salesh P.*, 2022 WL 17082375, at *8 (collecting cases where judges in the Northern District of California applied the *Mathews* factors to a habeas petitioner's due process claims). Here, each factor weighs in Petitioner's favor, requiring this Court immediately release Petitioner or to promptly hold a hearing to evaluate whether the government can justify their ongoing detention.

38. First, Petitioner indisputably has a weighty interest in their liberty, the core private interest at stake here. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment. . . lies at the heart of the liberty [the Due Process Clause] protects."). Petitioner, who is being held in "incarceration-like conditions," has an overwhelming interest here, regardless of the length of her immigration detention, because "any length of detention implicates the same" fundamental rights. *Rajnish v. Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020).

39. Second, Petitioner suffered the erroneous risk of deprivation of their liberty. The risk of erroneous deprivation of their liberty is high, as he has been detained in DHS/ICE custody since approximately December 5, 2025 "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf*, 634 F.3d at 1092. Due process requires the government must bear the burden of proof by clear and convincing evidence to justify continued detention. To justify immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a flight risk and/or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). During the Rodriguez Bond Hearing on approximately June 18, 2026, Respondents did not justify the basis for detention and/or explain why the Petitioner is a flight risk or danger to the community by clear and convincing evidence. During the Rodriguez bond hearing on approximately June 18, 2026, Respondents did not justify the basis for detention and/or explain why the Petitioner is a flight risk or danger to the community by clear and convincing evidence. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider alternatives to detention. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider financial ability to pay. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated. During the Rodriguez Bond Hearing on approximately June 18, 2026, the

Petitioner was pro-se and was also sick and just came in from medical before the Rodriguez Bond Hearing according to the petitioner. In addition, the Petitioner requested a continuance 3-4 times during the Rodriguez Bond Hearing on approximately June 18, 2026, however, was denied and there was a Hindi interpreter during the Rodirguez Bond Hearing and not a Haryanvi interpreter, which is the Petitioner's native language according to the Petitioner. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ incorrectly applied the factors in *Guerra*, 24 I&N Dec. 37 (BIA 2006) to determine that Petitioner was a flight risk. Also, the Respondent's didn't bear the burden of showing by clear and convincing evidence that Petitioner poses a flight risk. In addition, the Respondent's didn't establish by clear and convincing evidence that Petitioner is a flight risk. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

40. Third, the government's interest is very low in continuing to detain Petitioner without providing any neutral review. *See Mathews*, 424 U.S. at 335. The specific interest at stake here is not the government's ability to continue to detain Petitioner, but rather the government's ability to continue to detain them for months on end without any individualized review. *See Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019); *Henriquez v. Garland*, No. 5:22-CV-

00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022). The cost of providing an individualized inquiry is minimal. *See Henriquez*, 2022 WL 2132919, at *5. The government has repeatedly conceded this fact. *See Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019); *Singh v. Barr*, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019); *Marroquin Ambriz*, 420 F. Supp. 3d at 964. During the Rodriguez Bond Hearing on approximately June 18, 2026, Respondents did not justify the basis for detention and/or explain why the Petitioner is a flight risk or danger to the community by clear and convincing evidence. During the Rodriguez bond hearing on approximately June 18, 2026, Respondents did not justify the basis for detention and/or explain why the Petitioner is a flight risk or danger to the community by clear and convincing evidence. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider alternatives to detention. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider financial ability to pay. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated. During the Rodriguez Bond Hearing on approximately June 18, 2026, the Petitioner was pro-se and was also sick and just came in from medical before the Rodriguez Bond Hearing according to the petitioner. In addition, the Petitioner requested a continuance 3-4 times during the Rodriguez Bond Hearing on approximately June 18, 2026, however, was denied and there was a Hindi interpreter during the Rodirguez Bond Hearing

and not a Haryanvi interpreter, which is the Petitioner's native language according to the Petitioner. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ incorrectly applied the factors in *Guerra*, 24 I&N Dec. 37 (BIA 2006) to determine that Petitioner was a flight risk. Also, the Respondent's didn't bear the burden of showing by clear and convincing evidence that Petitioner poses a flight risk. In addition, the Respondent's didn't establish by clear and convincing evidence that Petitioner is a flight risk. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

41. In sum, the *Mathews* factors establish that Petitioner is entitled to immediate release from custody or an evidentiary hearing before a neutral adjudicator.

42. Petitioner's detention, without *any* individualized review, is unreasonable under any multi-factor reasonableness test. Alternatively, courts that apply a reasonableness test have considered many non-exhaustive factors in determining whether detention is reasonable. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-22 (3d Cir. 2020). The reasonableness inquiry is "highly fact-specific." *Id.* at 210. "The most important factor is the duration of detention." *Id.* At 211. Duration is evaluated along with "all the other circumstances," including (1) whether detention is likely to continue, (2) reasons

for the delay, and (3) whether the conditions of confinement are meaningfully different from criminal punishment. *Id.* at 211. As noted, Petitioner has been detained for a substantial length of time and Petitioner's detention is likely to continue as Petitioner asserts their right to seek immigration relief. In fact, Petitioner has already been detained by Respondents since approximately December 5, 2025. Petitioner's detention is not likely to end in the reasonably foreseeable future. The Petitioner's case appeal is pending before the BIA. The Petitioner is aggressively defending his case appeal with the BIA and has a strong likelihood of prevailing on his case appeal with the BIA. In case Petitioner's BIA appeal is dismissed, Petitioner has the right to further appeal his case with the 9th Circuit Court of Appeals, which will result in even further detention of the Petitioner.

43. Noncitizens should not be punished for pursuing "legitimate proceedings" to seek relief. *See Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("[I]t ill suits the United States to suggest that [Petitioner] could shorten his detention by giving up these rights and abandoning his asylum application."). Thus, courts should not count a continuance against the noncitizen when they obtained it in good faith to prepare their removal case, including efforts to obtain counsel. *See Hernandez Gomez*, 2023 WL 2802230, at *4 ("The duration and frequency of these requests [for continuances] do not

diminish his significant liberty interest in his release or his irreparable injury of continued detention without a bond hearing.”). Moreover, Petitioner’s confinement and experiences at a facility operated by a private, for-profit prison contractor, demonstrate that their conditions of confinement are not meaningfully different from those of criminal punishment.

44. At a bond hearing, due process requires certain minimum protections to ensure that a noncitizen’s detention is warranted: the government must bear the burden of proof by clear and convincing evidence to justify continued detention, taking into consideration available alternatives to detention; and, if the government cannot meet its burden, the noncitizen’s ability to pay a bond must be considered in determining the appropriate conditions of release.

45. To justify prolonged immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020), *rev'd on other grounds by Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 213 L. Ed. 2d 102 (2022) (“*Jennings*’s rejection of layering [the clear and convincing burden of proof standard] onto § 1226(a) as a matter of statutory construction cannot . . . undercut our constitutional due process holding in *Singh*.”); *Sho*, 2023 WL 4014649, at *5 (applying *Singh* and holding that the government shall bear the burden in a

constitutionally required bond hearing to remedy detention under a different statutory provision); *Singh,* 2023 WL 5836048, at *9 (same); *Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (same); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *7 (N.D. Cal. Mar. 31, 2023) (same); *Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023) (same); *Martinez Leiva v.Becerra*, No. 23-CV-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023); *I.E.S. v. Becerra*, No. 23-CV-03783-BLF, 2023 WL 6317617, at *10 (N.D. Cal. Sept. 27, 2023) (same); *Singh Grewal v. Becerra,* No. 23-CV-03621-JCS, 2023 WL 6519272, at *8 (N.D. Cal. Oct. 4, 2023) (same); *Gomez v. Becerra*, No. 23-CV-03724-JCS, 2023 WL 6232236, at *9 (N.D. Cal. Sept. 25, 2023) (same); *Henriquez v. Garland*, No. 23-CV-01025-AMO, 2023 WL 6226374, at *4 (N.D. Cal. Sept. 25, 2023) (same); *Rodriguez Picazo v. Garland*, No. 23-CV-02529-AMO, 2023 WL 5352897, at *7 (N.D. Cal. Aug. 21, 2023) (same).

46. Where the Supreme Court has permitted civil detention in other contexts, it has relied on the fact that the Government bore the burden of proof by at least clear and convincing evidence. *See United States v. Salerno*, 481 U.S. 739, 750, 752 (1987) (upholding pre-trial detention after a “full-blown adversary hearing” requiring “clear and convincing evidence” and “a neutral decisionmaker”); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (striking down

civil detention scheme that placed burden on the detainee); *Zadvydas*, 533 U.S. at 692 (finding post-final-order custody review procedures deficient because, *inter alia*, they placed burden on detainee).

47. The requirement that the government bear the burden of proof by clear and convincing evidence is also supported by application of the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). First, "an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" *See Rodriguez Diaz*, 53 F.4th at 1207 (citing *Singh*, 638 F.3d at 1208). Second, the risk of error is great where the government is represented by trained attorneys and detained noncitizens are often unrepresented and may lack English proficiency. *See Santosky v. Kramer*, 455 U.S. 745, 763 (1982) (requiring clear and convincing evidence at parental termination proceedings because "numerous factors combine to magnify the risk of erroneous factfinding" including that "parents subject to termination proceedings are often poor, uneducated, or members of minority groups" and "[t]he State's attorney usually will be expert on the issues contested"). Moreover, detained noncitizens are incarcerated in prison-like conditions that severely hamper their ability to obtain legal assistance, gather evidence, and prepare for a bond hearing. *See supra* ¶ 32. Third, placing the burden on the government imposes minimal cost or inconvenience to it, as the government has access to the noncitizen's immigration

records and other information that it can use to make its case for continued detention.

48. Due process also requires consideration of alternatives to detention. The primary purpose of immigration detention is to ensure a noncitizen's appearance during civil removal proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to this purpose if there are alternative conditions of release that could mitigate risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979) (civil pretrial detention may be unconstitutionally punitive if it is excessive in relation to its legitimate purpose). ICE's alternatives to detention program—the Supervision Appearance Program—has achieved extraordinary success in ensuring appearance at removal proceedings, reaching compliance rates close to 100 percent. *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (observing that ISAP "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"). Thus, alternatives to detention must be considered in determining whether prolonged incarceration is warranted.

49. Due process likewise requires consideration of a noncitizen's ability to pay a bond. "Detention of an indigent 'for inability to post money bail' is impermissible if the individual's 'appearance at trial could reasonably be assured by one of the alternate forms of release.'" *Hernandez*, 872 F.3d at 990 (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (en banc)). Therefore,

when determining the appropriate conditions of release for people detained for immigration purposes, due process requires "consideration of financial circumstances and alternative conditions of release." *Id.*; *see also Martinez v. Clark*, 36 F.4th 1219, 1231 (9th Cir. 2022) ("While the government had a legitimate interest in protecting the public and ensuring the appearance of noncitizens in immigration proceedings, we held [in *Hernandez*] that detaining an indigent alien without consideration of financial circumstances and alternative release conditions was 'unlikely to result' in a bond determination 'reasonably related to the government's legitimate interests.' (citation omitted).").

## CLAIMS FOR RELIEF

### Violation of Fifth Amendment Right to Due Process

50. Petitioner re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

51. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

52. To justify Petitioner's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that Petitioner's detention is justified by clear and convincing

evidence of flight risk or danger, taking into account whether alternatives to detention could sufficiently mitigate that risk.

53. Petitioner's detention, without *any* individualized review, is unreasonable under the *Mathews v. Eldridge* due process test.

54. Petitioner's detention, without *any* individualized review, is unreasonable under any multi-factor reasonableness test.

55. Due process requires the government must bear the burden of proof by clear and convincing evidence to justify continued detention. To justify immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a flight risk and/or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).

56. Due process also requires consideration of alternatives to detention. The primary purpose of immigration detention is to ensure a noncitizen's appearance during civil removal proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to this purpose if there are alternative conditions of release that could mitigate risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979) (civil pretrial detention may be unconstitutionally punitive if it is excessive in relation to its legitimate purpose).

57. Due process also requires consideration of ability to pay a bond. "Detention of an indigent 'for inability to post money bail' is impermissible if the

individual's 'appearance at trial could reasonably be assured by one of the alternate forms of release.'" *Hernandez*, 872 F.3d at 990 (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (en banc)).

58. During the Rodriguez bond hearing on approximately June 18, 2026, Respondents did not justify the basis for detention and/or explain why the Petitioner is a flight risk or danger to the community by clear and convincing evidence. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

59. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider alternatives to detention. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

60. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ did not consider financial ability to pay. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

61. During the Rodriguez Bond Hearing on approximately June 18, 2026, the Petitioner was pro-se and was also sick and just came in from medical before the Rodriguez Bond Hearing according to the petitioner. In addition, the Petitioner requested a continuance 3-4 times during the Rodriguez Bond Hearing on approximately June 18, 2026, however, was denied and there was a Hindi interpreter during the Rodirguez Bond Hearing and not a Haryanvi interpreter,

which is the Petitioner's native language according to the Petitioner. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

62. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ incorrectly applied the factors in *Guerra*, 24 I&N Dec. 37 (BIA 2006) to determine that Petitioner was a flight risk. Also, the Respondent's didn't bear the burden of showing by clear and convincing evidence that Petitioner poses a flight risk. In addition, the Respondent's didn't establish by clear and convincing evidence that Petitioner is a flight risk. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

63. During the Rodriguez bond hearing on approximately June 18, 2026, the IJ incorrectly applied the factors in *Guerra*, 24 I&N Dec. 37 (BIA 2006) to determine that Petitioner was a flight risk. Majority if not all the factors in *Guerra*, 24 I&N Dec. 37 (BIA 2006) favor the Petitioner and establish that Petitioner is not a flight risk. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

64. The court in *Guerra*, 24 I&N Dec. 37 (BIA 2006) listed several factors that an IJ can consider when determining whether an alien is a flight risk. These factors include: "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family

ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id* at 40. Although an IJ has broad discretion in deciding which factors they may consider during custody redetermination hearings and that the IJ may also give more weight to one factor over another, the decision of the IJ for custody redetermination must be reasonable. *Id*.

65. **The Petitioner had a fixed address in the United States.** If released on bond, the Petitioner would reside with his sponsor who had a fixed address. Thus, the Petitioner had a fixed address in the United States.

66. **The Petitioner had a long length of residence in the United States.** The Petitioner last entered the United States in approximately January 2023, thus the Petitioner had been in the U.S. for nearly four years now. Thus, the Petitioner had a long length of residence in the United States.

67. **The Petitioner had strong ties in the United States.** The Petitioner had strong ties in the United States mainly his sponsor. Thus, the Petitioner had strong ties in the United States.

68. **The Petitioner's employment history is a neutral factor.** The Petitioner's employment history is a neutral factor since the Petitioner entered the United States since he has a fear of going back to India and to apply for asylum withholding of removal, and CAT. The Petitioner timely filed an I-589 application for asylum and withholding of removal in approximately April 2023 according to the Petitioner.

69. **The Petitioner had an excellent record of appearances before the Immigration Court.** The Petitioner had an excellent record of appearances before the Immigration Court. The Petitioner had attended all his required Immigration Court hearings at the Immigration Court according to the Petitioner. Also, the Petitioner will continue to attend all his required Immigration Court hearings if released from DHS/ICE custody on bond. Thus, the Petitioner had an excellent record of appearances before the Immigration Court.

70. **The Petitioner didn't have a criminal record anywhere in the world.** The Petitioner is a person of good moral character. The Petitioner didn't have a criminal record in the United States nor India nor anywhere else in the world according to the Petitioner. Also, there is no evidence on the record of the

Petitioner having a criminal record in the United States nor India nor anywhere else in the world. Thus, the Petitioner didn't have a criminal record anywhere in the world.

71. **The Petitioner didn't have a history of immigration violations.** The Petitioner didn't have a history of immigration violations according to the Petitioner. The Petitioner's only immigration violation was entering the United States illegally in approximately January 2023. However, the Petitioner timely filed an I-589 application for asylum and withholding of removal in approximately April 2023 according to the Petitioner. Thus, the Petitioner didn't have a history of immigration violations.

72. **The Petitioner never attempted to flee prosecution or otherwise escape from authorities.** The Petitioner never attempted to flee prosecutor or otherwise escape authorities in the United States nor India nor anywhere else in the world according to the Petitioner.

73. **The Petitioner's manner of entry is a neutral factor.** The Petitioner entered the United States illegally in approximately January 2023. The Petitioner entered the United States since he has a fear of going back to India and to apply for asylum withholding of removal, and CAT. The Petitioner timely filed an I-589 application for asylum and withholding of removal in approximately April 2023 according to the Petitioner.

74. Thus, the Petitioner is not a flight risk based on all of the factors under Matter of Guerra.

75. Thus, the IJ incorrectly applied the factors in *Guerra*, 24 I&N Dec. 37 (BIA 2006) to determine that Petitioner was a flight risk. Also, the Respondent's didn't bear the burden of showing by clear and convincing evidence that Petitioner poses a flight risk. In addition, the Respondent's didn't establish by clear and convincing evidence that Petitioner is a flight risk. The Petitioner's rights under the Due Process Clause of the Fifth Amendment were violated.

76. Accordingly, the Petitioner's prolonged detention violates the Due Process Clause of the Fifth Amendment.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause within three days as to why this Petition should not be granted as required by 28 U.S.C. § 2243, and ordering that they not transfer Petitioner out of this district during the pendency of the court's adjudication of this petition;

(3) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody immediately and permanently enjoin his re-detention during

the pendency of his removal proceeding and case appeal pending before BIA absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that the Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks;

(4) In the alternative, should the Court determine that immediate release is not warranted, order Respondents to provide Petitioner with an individualized bond hearing before an impartial immigration judge within seven (7) days, where the government bears the burden of establishing by clear and convincing evidence that Petitioner is a flight risk and/or danger to the community. Also, there must be a consideration of alternatives to detention and financial ability to pay.

(5) Declare that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment. Also, declare that no justification for the basis for detention and/or explain why the Petitioner is a flight risk or danger to the community by clear and convincing evidence violates the Due Process Clause of the Fifth Amendment. In addition, declare that not considering alternatives to detention violates the Due Process Clause of the Fifth Amendment. In addition, declare that not considering financial ability to pay violates the Due Process Clause of the Fifth Amendment.

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(7) Grant any other and further relief that this Court deems just and proper.

Respectfully submitted this 26 day of August 2026.

**SHAHZADA "SHAW" ASHRAF, ESQ.**
*Attorney for Petitioner*